# EXHIBIT 3

# 02.02.2024 Dwolla, Inc.'s Complaint

Hearing Date: 6/4/2024 10:00 AM
Location: Court Room 2410
Judge: Loftus, Anna M.

12-Person Jury

FILED
2/2/2024 4:07 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH00702
Calendar, 15
26253000

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| DWOLLA, INC., <br><br> Plaintiff, <br><br> v. <br><br> HISCOX INSURANCE COMPANY INC., <br><br> Defendant. | 2024CH00702 <br> Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR DECLARATORY RELIEF, COMPENSATORY DAMAGES AND BAD FAITH DAMAGES

Plaintiff, Dwolla, Inc. ("Dwolla"), by its attorneys, Taft, Stettinius & Hollister, and for its Complaint for Declaratory Relief, Compensatory Damages and Bad Faith Damages against Defendant, Hiscox Insurance Company Inc. ("Hiscox"), alleges as follows:

### NATURE OF ACTION AND RELIEF REQUESTED

1. Dwolla brings this action for declaratory relief, compensatory damages and bad faith damages for Hiscox's bad faith refusal to honor its obligations under the terms of its Commercial Crime Insurance Policy for two separate covered computer fraud losses totaling no less than $6.89 million.

2. Despite Hiscox's contractual agreement to cover, among other things, "loss of or damage to money, securities, or other property resulting directly from computer fraud," it has unjustly, and without any legitimate or good faith reason, failed and refused to cover Dwolla's losses.

### PARTIES, JURISDICTION AND VENUE

3. Dwolla is a Delaware corporation headquartered at 909 Locust Street, Suite 201, Des Moines, Iowa 50309.

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

4. Defendant Hiscox is a Chicago, Illinois domiciled insurance company that does business in all 50 states. Hiscox has an office located at 104 South Michigan Avenue, #600, Chicago, Illinois 60603. Hiscox is licensed to, and does business in the State of Illinois.

5. This Court has personal jurisdiction over Hiscox pursuant to 735 ILCS 5/2-209 because Hiscox is an Illinois domiciled insurance company with its principal office in Chicago, Cook County Illinois and because, among other things, Hiscox transacts business in Illinois and made contracts substantially connected with Illinois.

6. Venue in Cook County is proper because Hiscox is a resident of Cook County, Illinois.

## FACTUAL ALLEGATIONS

### Hiscox's Commercial Crime Insurance Policy

7. On or about April 1, 2023, Hiscox issued Commercial Crime Insurance Policy No. UC22170080.23 (the "Policy") to Dwolla in Des Moines, Iowa (the "Policy"). A copy of the Policy is attached hereto as Exhibit A. The authenticity of Exhibit A is subject to verification for completeness and accuracy through discovery or otherwise, as necessary.

8. Under one of the main, and most important, insuring agreements in the Policy, Hiscox agreed to cover, among other things, the loss of money resulting from Tech Fraud, including, specifically, the loss of money due to Computer Fraud:

> D. 1. **Computer**: loss of or damage to **money, securities,** or **other property** resulting directly from **computer fraud**, but **we** will only pay up to $10,000 for any one **occurrence** of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them; (emphasis in the original)

9. The Policy defines **money** to include currency and funds on deposit at a financial institution.

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

10.  The Policy defines **Computer Fraud** to mean:

> The use or manipulation of any computer system to make a fraudulent transfer of **money**, **securities**, or **other property** from inside the **premises** or **financial institution premises** to a person (other than a **messenger**) or place outside the **premises** or **financial institution premises**.
>
> **Computer fraud** does not include any fraudulent transfer of **money, securities,** or **other property** which required **you, your employees, your executive employees**, or other on **your** behalf (other than a **financial institution**) to initiate a transaction to transfer, or authorize the transfer of, such **money, securities,** or **other property**.

11.  The policy period for the Policy is April 1, 2023 to April 1, 2024.

12.  The Policy provides Computer Fraud limits of $5 million per occurrence, subject to a $100,000 per occurrence deductible.

13.  While the Policy contains certain coverage limitations and/or exclusions, there are no such limitations or exclusions that apply (or ever would apply) to defeat coverage under the Policy for Dwolla's losses at issue in this matter.

14.  The Policy was in effect at all times relevant hereto, and all conditions required by the Policy have all been satisfied or excused.

15.  Dwolla paid all premiums due Hiscox under the Policy.

### Dwolla's Payment Application Business

16.  Dwolla offers an application programming interface ("API") that allows its customers to embed payment capabilities in the customers' own web-based applications (typically either the customers' own websites or mobile apps).

17.  To actually make the payments, Dwolla partners with financial institutions who agree to transmit the payment instructions to the ACH network on behalf of Dwolla, and to store funds related to such payments in an account held by the financial institution for

3

benefit of Dwolla's customers ("FBO Account"). The funds in the FBO Account are owned by Dwolla's customers but Dwolla is directly responsible for any losses of the money deposited in the FBO Account.

18. All payments made using Dwolla's API must flow through the FBO Account, meaning that at least one user in every transaction must be verified by Dwolla's process to enable funds to be held in their name in the FBO Account. Transactions consist of some combination of the following options: (a) an ACH debit into the FBO Account, which is ledgered by Dwolla to add to the "balance" of the initiating user; (b) a transfer between user balances within the FBO Account (which are instant and carried out solely by ledger updates); or (c) an ACH credit out of the FBO Account, into a receiving financial institution account, which is ledgered by Dwolla to subtract from the "balance" of the initiating user.

19. For customers who provide additional due diligence items (*e.g.*, bank statements, additional risk mitigation measures, etc.), Dwolla can also provide access to faster settlement timing through Same Day ACH debits and credits.

20. Same Day ACH makes the funds available within the same banking day. Funds that have been added to a user's balance through Same Day ACH become eligible to transfer (either to other users or out to other bank accounts) at or around the time the funds initially settle.

**Dwolla Directly Sustains the Customer A Loss as a Direct Result of Computer Fraud**

21. Customer A is a payments company that used Dwolla to facilitate payments from consumers to merchants via balance-to-balance transfers.

22. After completing Dwolla's due diligence and onboarding requirements, Customer A was approved to use Dwolla's services on Customer A's live application on March 16, 2022.

4

23. Thereafter, fraudulent actors initiated various fraudulent and unauthorized transfers of money from the FBO Account through the use and/or manipulation of a computer system or systems. Although the money in the FBO Account belonged to Dwolla's customers, Dwolla was responsible to the financial institution that maintained the FBO Account for any losses therein.

24. After investigation, it was revealed that the fraudulent actors used Customer A's computer systems – which had used Dwolla's API – to fraudulently transfer approximately $630,141.38 in funds out of the FBO Account (the "Customer A Scheme").

25. When Dwolla and its financial institution partners receive return demands from the source financial institutions, the demands must be honored in accordance with ACH rules, and the funds are deducted from the FBO Account. In the Customer A Scheme, with the Same Day ACH timing, because the funds had already been sent to another financial institution, the return of funds depleted the FBO Account by the amount of the returns and directly caused a loss of money for which Dwolla is responsible. The financial institution at which the FBO Account is maintained made demand on Dwolla for all loss associated with the Customer A Scheme.

26. Customer A has been unwilling to reimburse Dwolla for any of the loss amount, although it is required to reimburse Dwolla for these losses under its contract.

27. As of August 24, 2023 Dwolla incurred a loss of $484,839.88 due directly to the Customer A Scheme (the "Customer A Loss"). While the original fraudulent transfers totaled more than $630,000 Dwolla was able to reduce this loss through mitigation efforts that recovered more than $145,000.

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

28.   Dwolla's Customer A Loss was the direct result of Computer Fraud as defined by the Policy.

29.   Dwolla did not authorize, and was not required to authorize, any of the transactions, or transfers of money, involved in the Customer A Scheme.

30.   The Customer A Loss did not result from the use of another person's or organization's confidential or personal information.

31.   Dwolla's Customer A Loss did not arise from the use of Dwolla's computer system by a person authorized to use that system. Rather, not only were the fraudulent actors not authorized to access Dwolla's computer system, but they perpetrated their fraud by using Dwolla's API via Customer A's computer systems.

32.   Dwolla's Customer A Loss did not result from the fraudulent preparation or input of electronic data or computer programs.

**Dwolla Directly Sustains the Customer B Loss as a Direct Result of Computer Fraud**

33.   Customer B signed up for a Dwolla account through its online sign-up process on September 28, 2022.

34.   After completing Dwolla's due diligence and onboarding requirements, Customer B was approved to use Dwolla's services on its live application on December 15, 2022.

35.   For several months, Customer B had very few users and very few transactions. Beginning in April 2023, the activity on the Customer B application began to gradually increase.

36.   Thereafter, fraudulent actors initiated various fraudulent and unauthorized transfers of money from the FBO Account through the use and manipulation of a computer system or systems. Although the money in the FBO Account belonged to Dwolla's customers,

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

Dwolla was responsible to the financial institution that maintained the FBO Account for any losses therein.

37. The fraudster(s) used Customer B's computer systems – which had used Dwolla's API – to fraudulently transfer more than $8.2 million in funds out through 42 different financial institutions (the "Customer B Scheme").

38. When Dwolla and its financial institution partners receive return demands from the source financial institutions, these must be honored in accordance with ACH rules, and the funds are deducted from the FBO Account. In the Customer B Scheme, with the Same Day ACH timing, because the funds have already been sent to another financial institution, the return of funds depleted the FBO Account and caused a loss of money for which Dwolla is responsible. The financial institution at which the FBO Account is maintained made demand on Dwolla for all loss associated with the Customer B Scheme.

39. The exact amount of Dwolla's loss due to the Customer B Scheme is currently unknown and Dwolla's investigation continues. Nevertheless, Dwolla currently estimates that the loss due to the Customer B Scheme is no less $6,408,475.86 (the "Customer B Loss").

40. Dwolla's Customer B Loss was the direct result of Computer Fraud as defined by the Policy.

41. Dwolla did not authorize, and was not required to authorize, any of the transactions, or transfers of money, involved in the Customer B Scheme.

42. The Customer B Loss did not result from the use of another person's or organization's confidential or personal information.

43. Dwolla's Customer B Loss did not arise from the use of Dwolla's computer system by a person authorized to use that system. Rather, not only were the fraudulent actors not

7

authorized to access Dwolla's computer system, but they perpetrated their fraud by using Dwolla's API via Customer B's own computers and computer systems.

44.  Dwolla's Customer B Loss did not result from the fraudulent preparation or input of electronic data or computer programs.

### Hiscox Wrongfully Denies Dwolla's Claims under the Policies

45.  On or about November 22, 2023, Hiscox sent Dwolla correspondence denying Dwolla's claim for coverage under the Policy for both the Customer A Loss and the Customer B Loss.

46.  In denying coverage, Hiscox contended, among other things, that no coverage exists for either claim because the transactions at issue do not meet the definition of computer fraud, Dwolla "authorized" the fraudulent transfers and Dwolla did not suffer a "direct loss."

47.  Hiscox has also contended that certain coverage exclusions apply to both claims.

### COUNT I – DECLARATORY JUDGMENT
(Customer A Claim)

48.  Dwolla repeats and realleges paragraphs 1 through 47 as paragraph 48 of this Count I as though fully set forth herein.

49.  The Policy is a valid and enforceable insurance contract. The Policy provides full coverage for Dwolla's Computer Fraud losses associated with the Customer A Scheme.

50.  Dwolla has complied with all applicable provisions of the Policy, including but not limited to payment of the premiums, and timely notice to Hiscox of this matter.

51.  As a result of the Customer A Scheme and associated Computer Fraud, "money" for which Dwolla is responsible was lost (at least $484,839.88) from the FBO Account. The loss was a direct result of the Computer Fraud associated with this account.

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

52. None of the coverage exclusions in the Policy applies to Dwolla's coverage claim for the Customer A Loss.

53. Hiscox has, in bad faith, refused to reimburse Dwolla for any losses directly resulting from the Customer A Scheme.

54. An actual and justiciable controversy exists between the parties and each of them, concerning the coverage afforded by the Policy for the Customer A Loss associated with the Customer A Scheme.

55. As a result of the controversy, Dwolla seeks a declaration from the Court that Dwolla's losses described herein and to be proven at trial are covered by the Policy and applicable law.

56. Dwolla has also suffered damage as a result of Hiscox's wrongful denial of coverage in at least the amount of the Customer A Loss.

WHEREFORE, Dwolla respectfully requests that the Court issue judgment in its favor and against Defendant, Hiscox Insurance Company Inc. on this Count I as follows:

(a) Declaring that the Dwolla's losses as a result of the Customer A Scheme are covered by the Policy;

(b) Declaring the amounts that Dwolla is entitled to recover under the Policy;

(c) Awarding Dwolla a money judgement in the amount that it is entitled to recover against Hiscox under the Policy for all losses associated with the Customer A Scheme, in an amount to be proved at trial and least $484,839.88; and

(d) Providing all other appropriate relief, including but not limited to fees, costs, and interest.

### COUNT II – BREACH OF INSURANCE CONTRACT
### (Customer A Claim)

57. Dwolla repeats and realleges paragraphs 1 through 56 as paragraph 57 of this Count II as though fully set forth herein.

58. The Policy is a binding and enforceable contract.

59. The Policy provides full coverage for Dwolla's Customer A losses associated with the Customer A Scheme.

60. Dwolla has complied with all applicable provisions and/or conditions precedent under the Policy, including but not limited to payment of the premiums, and timely notice to Hiscox of this matter.

61. Hiscox breached, and continues to breach, the Policy by denying Dwolla coverage for the Customer A Loss.

62. Hiscox breached, and continues to breach, the implied covenant of good faith and fair dealing by denying Dwolla coverage for the Customer A Loss.

63. Dwolla has suffered damages as a result of Hiscox's wrongful denial of coverage in at least the amount of the Customer A Loss.

WHEREFORE, Dwolla respectfully requests that the Court issue judgment in its favor and against Defendant, Hiscox Insurance Company Inc. on this Count II as follows:

(a) Awarding Dwolla a money judgement in the amount that it is entitled to recover against Hiscox under the Policy for all losses associated with the Customer A Scheme, in an amount to be proved at trial of at least $484,839.88; and

(b) Providing all other appropriate relief, including but not limited to fees, costs, and interest.

### COUNT III – DECLARATORY JUDGMENT
(Customer B Claim)

64. Dwolla repeats and realleges paragraphs 1 through 63 as paragraph 64 of this Count III as though fully set forth herein.

65. The Policy is a valid and enforceable insurance contract. The Policy provides full coverage for Dwolla's Customer B Loss associated with the Customer B Scheme.

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

66. Dwolla has complied with all applicable provisions of the Policy, including but not limited to payment of premiums, and timely notice to Hiscox.

67. As a result of the Customer B Scheme and the associated Computer Fraud, "money" for which Dwolla is responsible was lost (at least $6,408,475.86) from the FBO Account. The loss was a direct result of the Computer Fraud associated with this account.

68. None of the coverage exclusions in the Policy applies to Dwolla's claim for coverage under the Policy for the Customer B Loss arising out of the Customer B Scheme.

69. Hiscox has, in bad faith, refused to reimburse Dwolla for any losses incurred as a result of the Customer B Scheme.

70. An actual and justiciable controversy exists between the parties and each of them, concerning the coverage afforded by the Policy for Dwolla's Computer Fraud losses directly associated with the Customer B Scheme.

71. As a result of the controversy, Dwolla seeks a declaration from the Court that Dwolla's losses described herein and to be proven at trial are covered by the Policy and applicable law.

72. Dwolla has also suffered damage as a result of Hiscox's wrongful denial of coverage in at least the amount of the Customer B Loss.

WHEREFORE, Dwolla respectfully requests that the Court issue judgment in its favor and against Defendant, Hiscox Insurance Company Inc. on this Count III as follows:

(a) Declaring that all of the Customer B Loss associated with the Customer B Scheme are covered by the Policy;

(b) Declaring the amounts that Dwolla is entitled to recover under the Policy;

(c) Awarding Dwolla a money judgment in the amount that it is entitled to recover against Hiscox under the Policy for all Customer B Loss associated with the

11

FILED DATE: 2/2/2024 4:07 PM    2024CH00702

                Customer B Scheme in an amount to be proved at trial and at least $6,408,475.86; and

    (d)    Providing all other appropriate relief, including but not limited to fees, costs, and interest.

## COUNT IV – BREACH OF INSURANCE CONTRACT
### (Customer B Claim)

73.    Dwolla repeats and realleges paragraphs 1 through 72 as paragraph 73 of this Count IV as though fully set forth herein.

74.    The Policy is a binding and enforceable contract.

75.    The Policy provides full coverage for the Customer B Loss associated with the Customer B Scheme.

76.    Dwolla has complied with all applicable provisions and/or conditions precedent under the Policy, including but not limited to payment of the premiums, and timely notice to Hiscox of this matter.

77.    Hiscox breached, and continues to breach, the Policy by denying Dwolla coverage for the Customer B Loss.

78.    Hiscox breached, and continues to breach, the implied covenant of good faith and fair dealing by denying Dwolla coverage for the Customer B Loss.

79.    Dwolla has suffered damages as a result of Hiscox's wrongful denial of coverage in at least the amount of the Customer B Loss.

For relief, Dwolla respectfully requests that the Court issue judgment in its favor and against Defendant, Hiscox Insurance Company Inc. on this Count IV as follows:

    (a)    Awarding Dwolla a money judgement in the amount that it is entitled to recover against Hiscox under the Policy for all losses associated with the Customer B Scheme, in an amount to be proved at trial of at least $6,408,475.86; and

    (b)    Providing all other appropriate relief, including but not limited to fees, costs, and interest.

## COUNT V – BAD FAITH
### (Denial of Claims Under Iowa Law)

80. Dwolla repeats and realleges paragraphs 1 through 79 as paragraph 80 of this Count V as though fully set forth herein.

81. Under the Policy, Dwolla is entitled to reimbursement for its losses as described in the Customer A and Customer B Schemes.

82. Hiscox's actions alleged herein in the denial of Dwolla's insurance coverage claims were committed in bad faith.

83. Hiscox had no reasonable, logical, or fairly debatable basis for denying Dwolla its benefits under the Policy for the Customer A and Customer B Losses.

84. For example, Hiscox attempted to persuade Dwolla that there was no coverage under the Policy for any of Dwolla's losses purportedly based on the Policy's "Ownership of Property and Interests Covered Clause." That clause clearly and plainly applies only to personal property – a term not defined by Hiscox in the Policy. However, as set forth above, all of Dwolla's losses in this matter involve the loss of "money" – a term specifically defined by Hiscox in the Policy. Hiscox does not contest that all of Dwolla's losses involve the loss of "money" as defined by the Policy.

85. Hiscox knew, or had reason to know, that its denial of Dwolla's coverage claims for the Customer A and Customer B Losses was without any reasonable, logical, or fairly debatable basis.

86. Given Hiscox's knowledge that its denial lacked any reasonable, logical, or fairly debatable basis, its decision to deny coverage was done with malice and/or was grossly negligent.

87. Hiscox's investigation of coverage claims for the Customer A and Customer B Loss was grossly negligent and/or deficient.

FILED DATE: 2/2/2024 4:07 PM   2024CH00702

FILED DATE: 2/2/2024 4:07 PM    2024CH00702

WHEREFORE, Dwolla respectfully requests that this Court enter judgment in its favor and against Defendant, Hiscox Insurance Company Inc. on this Count V as follows:

(a)    Awarding Dwolla compensatory damages in an amount to be proved at trial;

(b)    Awarding Dwolla punitive damages in an amount to be proved at trial; and

(c)    Providing all other appropriate relief, including but not limited to fees, costs and interest.

### PLAINTIFF DEMANDS TRIAL BY JURY

Dated: February 2, 2024                          Respectfully submitted,

DWOLLA, INC.

By:  /s/ Todd A. Rowden
     One of Its Attorneys

Todd A. Rowden (trowden@taftlaw.com)
James L. Oakley (joakley@taftlaw.com)
Adam K. Hollander (ahollander@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601-4208
Telephone:   (312) 320-5119
Facsimile:   (312) 527-4011
Firm I.D. No. 29143

130739452v5